**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-00209-REB

BRENT METCALF,

    Applicant,

v.

D. DAVIS, Warden,

    Respondent.

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

**Blackburn, J.**

This matter is before me on the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** ("Application") [#1][1] filed on February 1, 2010, by Applicant Brent Metcalf. Respondent filed an **Answer to Petition for Writ of Habeas Corpus** ("Answer") [#24]. Applicant elected not to reply to the answer. I must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney. *See* **Haines v. Kerner**, 404 U.S. 519, 520 (1972) (per curiam); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the pertinent portions of the record in this case, including the Application and the Answer, I conclude that the Application should be denied.

---

[1] "[#1] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## I. BACKGROUND

Applicant initiated this action while he was in the custody of the United States Bureau of Prisons ("BOP") and incarcerated at the Federal Prison Camp in Florence, Colorado. He was serving a twenty-four month sentence for conspiracy to commit tax fraud and assisting in the preparation of a false tax return that had been imposed by the United States District Court for the District of Utah. *United States v. Evanson, et al.*, No. 05-cr-00805-TC-2 (D. Utah Sept. 10, 2008). At the time Applicant filed this action, his projected release date was July 10, 2010, via good conduct time release. Answer at Ex. A-1.

On July 15, 2009, Applicant was reviewed for a Residential Reentry Center ("RRC")[2] under the Second Chance Act, 18 U.S.C. § 3624(c). As a result of the July 15 review, the BOP Unit Team recommended that a 120-day prerelease RRC placement was appropriate. Answer, Ex. A-1, Attach. 7 at 2. Applicant was accepted for admission to the residential program at the Cornell Corrections in Salt Lake City, Utah, on February 5, 2010, and was subsequently relocated to the Salt Lake City facility as early as March 4, 2010. Ex. A-1, Attach. 8; Notice of Change of Address [#11].

Applicant asserts two claims in the Application. In Claim One, Applicant contends the BOP abused its discretion in determining that his halfway house placement would be for only four months rather than the twelve months for which he was qualified. Applicant asserts further that the BOP staff's refusal was based on a memorandum from the BOP's general counsel instructing staff to grant no more than a

---

[2] Halfway houses also are called residential re-entry centers ("RRCs") or community correction centers ("CCCs").

six-month halfway house placement except in rare and unspecified instances. Applicant contends that the memorandum is contrary to the Second Chance Act.

In Claim Two, Applicant asserts that the BOP abused its discretion in determining he did not qualify for transfer to a halfway house under the BOP's Program Statement § 5100.08, 18 U.S.C. § 3621(b), and 42 U.S.C. § 17541(a)(2)(A). Applicant contends that, although when he applied for placement in a halfway house in January, 2009, he provided sufficient documentation of his qualifications under 18 U.S.C. § 3621(b) meriting an immediate transfer to a halfway house, he was told that a review would not be done until April, 2009. Applicant contends further that his ability to exhaust his administrative remedies regarding the issue was delayed for four months while he testified for the government in a civil matter in Utah. As relief, Applicant asks that I (1) direct Respondent to place him immediately in a halfway house; (2) find that the general counsel's memorandum is inconsistent with the Second Chance Act; and (3) find that any policy or practice that serves to limit or restrict the BOP staff's discretion in applying the Second Chance Act, 18 U.S.C. § 3621(b), and 42 U.S.C. § 17541(a)(2)(A) is unlawful.

Respondent argues first that because a challenge to the length of the RRC placement does not affect the duration of an applicant's confinement the action is improperly filed under 28 U.S.C. § 2241. Respondent argues also that the Application is moot because Applicant has received individualized consideration of his RRC placement request. Finally, Respondent contends that Applicant's arguments lack merit because the Second Chance Act does not provide a presumptive entitlement to a twelve-month RRC placement, and BOP policies do not contradict the Second Chance Act.

## II. Discussion

I must deal first with the question of mootness, not based on Respondent's arguments, but for the following reasons. As stated above, Applicant was placed in the halfway house as early as March 4, 2010. On review of the BOP's website, I find that Applicant was released from the BOP on July 9, 2010, in keeping with his good conduct time release date. *See* BOP Website, Inmate Locator.

A federal court has jurisdiction only so long as an applicant is in custody. 28 U.S.C. § 2241(c)(1). Release from the custody of the BOP, however, does not necessarily moot Applicant's claims. To maintain the suit, Applicant, however, must demonstrate some concrete and continuing injury collateral to the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978 (1998) (citation omitted)).

Here, Applicant has not demonstrated that he will continue to suffer a serious collateral injury. Because Applicant no longer is in custody, it is impossible to grant him an earlier RRC placement. Nor can I identify any continuing injury related to Applicant's claim, which is limited to whether his 120-day placement in an RRC was proper, or whether he should have received a twelve-month placement. Therefore, because Applicant has been released from custody, there is nothing to remedy. "Mootness, however it may have come about, simply deprives [the Court] of [its] power to act." *Spencer*, 523 U.S. at 18, 118 S. Ct. at 988. The federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Id.*

Even if Applicant's claims were determined on the merits, a finding in his favor is not likely. In 2007, Congress passed the Second Chance Act. Subparagraph (c) of 18 U.S.C. § 3624 provides:

> In general.- The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

The language of the statute makes clear that pre-release placement in an RRC is not mandatory and is within the discretion of the Director of the BOP.  That discretion is guided by the factors set forth in 18 U.S.C. § 3621(b).  Applicant, however, does not challenge any of the BOP's findings with regard to the particular facts of his background or history or contend that the BOP improperly weighed or balanced those factors.  His only contestation is the BOP presumes that a six-months halfway house placement is sufficient for most inmates, while the Second Chance Act requires the BOP to presume that a twelve-month placement is usually necessary.

Congress has posited considerable discretion in the BOP regarding placement of inmates. 18 U.S.C. § 3624(b) ("The Bureau may designate [an inmate] any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable").  Congress made clear that it was not intending "to limit or restrict the authority" of the BOP in this regard. 18 U.S.C. § 3624(c)(4).  Thus, there is no clearly expressed intention by Congress to usurp the BOP's discretion and presumptively establish a twelve-month halfway house placement.  *See Sacora v. Thomas*, 628 F.3d 1059, 1066 (9th Cir. 2010) (the starting point for community corrections is not twelve months).

After the enactment of the Second Chance Act of 2007, the BOP issued two memoranda (the "Memoranda") "providing guidance to its staff regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking

5

to revise more permanently its regulations." *Garza v. Davis,* 596 F.3d 1198, 1202 (10th Cir. 2010). The Tenth Circuit Court of Appeals has described the Memoranda as follows:

> The first memorandum, issued on April 14, 2008, addressed the statutory changes following the Second Chance Act of 2007, emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement ... are no longer applicable, and must no longer be followed." Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."
>
> The second BOP memorandum, issued on November 14, 2008, addressed inmate requests for transfer to RRCs when more than twelve months remained from their projected release date (that is, non-prerelease inmates). In relevant part, the memorandum instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration. However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was "no need" to perform immediately the statutorily prescribed individualized review. Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review. Staff were cautioned that they should not inform the inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy." The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."'

*Id.* at 1202-03 (internal citations omitted).

The Memoranda does not conflict with the Second Chance Act. *Ciocchetti v. Wiley,* 358 F. App'x 20, 24 (10th Cir. 2009). In *Ciocchetti,* the applicant argued that the BOP was categorically denying inmates' requests for transfers to halfway houses. In response to the applicant's argument, the Tenth Circuit determined that the Memoranda did not conflict with the Second Chance Act for the following reason:

> As its memoranda clearly indicate, the BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods of time exceeding six months; instructing BOP staff to individually consider each request for a transfer based on the factors set forth in § 3621(b) regardless of the time remaining on the requesting inmate's sentence. Further, the fact that the regional BOP director must approve any inmate's assignment to a RRC or CCC which is greater than six months in duration, is of no consequence because this requirement in no way demonstrates a policy of categorical denial.

*Id.*

In *Bun v. Wiley,* 351 F. App'x 267, 268 (10th Cir. 2009), the Tenth Circuit addressed a similar challenge to the Memoranda:

> Bun's argument that the new regulations are invalid also lacks merit. He contends that two memoranda concerning the new regulations must be invalidated "because they conflict with Congressional intent in enacting [18 U.S.C. §§ 3621(b) and 3624(c) ]." However, as noted by the district court, these memoranda actually support Bun's contentions that inmates are eligible to be transferred to CCCs at any time and are authorized to serve up to twelve months in an RRC. The first memorandum concerns inmate requests for transfer to CCCs and states that inmates are "legally eligible" to be placed in CCCs at any time during their prison sentence. The second memorandum recognizes that while the maximum pre-release RRC placement is twelve months, "Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less." Before granting an RRC placement greater than six months, BOP staff are required to obtain the permission of the Regional Director. Contrary to Bun's contentions, this requirement does not run afoul of § 3624(c). That statute does not entitle prisoners to a twelve-month placement in an RRC. *See* § 3624(c)(1).

Therefore, I find that nothing in the Memoranda violates § 3624(c). The BOP's decision to place Applicant in an RRC for only four months is within the scope of its authority. Although Applicant's claims lack merit, I will deny the Application and dismiss the action as moot.

### III.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [#1] filed on February 1, 2010, by Applicant Brent Metcalf is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**.

Dated at Denver, Colorado, March 25, 2011.

                    **BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge